109 P.3d 97

**In the Matter of the ESTATE OF Bernard William JUNG, Deceased.**

**Ted Bernard Jung, Petitioner–Appellee,**

v.

**Marc W. Jung, Respondent–Appellant.**

**No. 1 CA–CV 04–0272.**

Court of Appeals of Arizona, Division 1, Department E.

March 31, 2005.

Stevens & Van Cott, PLLC by Laurence B. Stevens, Charles Van Cott, Scottsdale, Attorneys for Respondent–Appellant.

Peter A. Neisser, Attorney at Law, P.C. by Peter A. Neisser, Scottsdale, Attorney for Petitioner–Appellee.

## OPINION

KESSLER, Presiding Judge.

¶ 1 Marc Jung ("Marc") appeals the superior court's decision denying probate of a codicil to the will of his father, Bernard Jung ("Bernard"). The court ruled that it could not determine when Marc signed the codicil as a witness and that if he signed the document after the decedent's death the codicil would not be a valid testamentary document. Because we determine that Arizona Revised Statutes ("A.R.S.") section 14–2502 (1995) does not preclude a witness from signing a testamentary document after the testator has died, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Bernard was the father of Marc and Ted Jung ("Ted"). Bernard executed his will on November 12, 1980. On August 6, 2002, Bernard met with Marc and Ted and discussed the disposition of some of his property. After the meeting, while still at Bernard's house, Marc prepared a typewritten codicil purporting to effectuate his father's wishes. Bernard signed the codicil in the presence of Marc and Alison Scott ("Scott"), Bernard's caregiver. Scott signed the document as a witness at that time. Copies of the document faxed to Marc's lawyer on August 7, 2002, shown to Ted on August 11, 2002, and given to Ted on August 14, 2002, bore only the signatures of Bernard and Scott. Bernard died on August 8, 2002.

¶ 3 On September 16, 2002, Marc filed an application for informal probate of the will and codicil and for his appointment as personal representative of Bernard's estate. Attached to the application were the 1980 will and codicil. The will provided that certain real property be devised to Marc and Ted as joint tenants with right of survivorship, that Bernard's personal property be divided among his surviving children in equal shares

as to value, and that the residue of his estate be divided in equal shares among his children. The codicil provided that Marc was to receive the realty, an additional parcel of real estate, Bernard's business and personal papers and books as well as his clothing, and half of his monetary assets. Ted was to receive a parcel of residential real property and half of Bernard's monetary assets. The codicil submitted to probate bore the signatures of Bernard, Scott, and Marc; Marc's signature was dated August 6, 2002. Also submitted with the application and testamentary documents were affidavits of the attesting witnesses. In his affidavit, Marc avowed that he "signed as witness in the presence and hearing of decedent."

¶ 4 The will and codicil were admitted to informal probate, and Marc was appointed personal representative of the estate. On January 13, 2003, Ted filed a petition for formal probate of the will and appointment of a personal representative. Ted asserted that the codicil was not valid and argued that Marc was responsible for misdating the document and perpetrating a fraud on the court. Marc filed an objection to the petition for formal probate. The brothers agreed that the 1980 will was valid and should be admitted to probate.

¶ 5 By stipulation, at trial the parties provided the deposition testimony of Marc's prior attorney and Scott. Marc's former attorney testified that on August 7, 2002, he had told Marc that he did not believe the codicil was a competent testamentary instrument because it lacked a second witness's signature and was not a holographic instrument because the material provisions were not in Bernard's handwriting. Scott testified that Marc had showed her a typed document and that she had been present when Marc gave the document to Bernard. Only she, Marc, and Bernard were in the room. Bernard read the document and other items repeatedly for eight to ten minutes. Marc asked Bernard if he understood the document, and Bernard said he did. She watched Bernard sign the document and signed it herself. She did not see Marc sign the document. Scott

identified the codicil as the document she signed.

¶ 6 Marc testified that Scott's account of his father's signing the codicil was essentially accurate. Marc testified that he had signed the codicil on August 7, 2002, at about 4:30 p.m. He explained that the document he faxed to his attorney on the afternoon of August 7, the document he showed to Ted on August 11, and the document he gave to Ted on August 14 did not contain his signature because they were copies made on August 7 before he signed the document. He admitted that at his deposition he had stated that he signed the codicil on August 6. He also testified that on August 6, he had not believed he needed more than one witness to his father's signature, but he had signed it because he thought, "I was there, I might as well sign it." He explained that he had dated his signature August 6 because that was the date he witnessed his father's signature.

¶ 7 Ted argued that Marc likely signed the codicil sometime after August 14, and that if Marc signed the codicil after Bernard's death on August 8, the codicil would be invalid under Arizona law. Marc argued that even if he had not signed the document until after Bernard's death, the law on which Ted relied had changed and that witnesses to a testamentary instrument were now required to sign the document "within a reasonable time" after the testator executed the document. Marc asserted that even if he did not sign the codicil on August 7, he signed it within a reasonable time and the court should admit the codicil to probate to carry out Bernard's wishes.

¶ 8 The superior court found that Marc and Scott were in the room when Bernard signed the codicil. The court ruled, however, that the codicil would not be a valid testamentary document if Marc signed it after Bernard's death and further stated that Marc, as the personal representative, had the burden of establishing that the witnesses signed the codicil within a reasonable time but prior to Bernard's death. The court ordered the codicil stricken and the 1980 will admitted to probate as the dispositive instrument.

¶ 9 Marc timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(J) (2003).

## DISCUSSION

¶ 10 Marc argues the superior court erred as a matter of law: (1) in interpreting A.R.S. § 14–2502 to require witnesses to a testamentary document to sign the document prior to the testator's death; and (2) by not interpreting A.R.S. § 14–2502 in a manner to give effect to Bernard's wishes as required by A.R.S. § 14–1102 (1995). Because we reverse on the first issue, we need not address the second.

¶ 11 We are bound by a trial court's findings of fact unless they are clearly erroneous. *Sabino Town & Country Estates Ass'n v. Carr*, 186 Ariz. 146, 149, 920 P.2d 26, 29 (App.1996). However, we are not bound by the court's conclusions of law. *Id.* Statutory interpretation is a question of law, which we review de novo. *State Comp. Fund v. Super. Ct.*, 190 Ariz. 371, 374–75, 948 P.2d 499, 502–03 (App.1997).

¶ 12 The goal in interpreting a statute is to find and give effect to the intent of the Legislature. *Mail Boxes, Etc. U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). We look first to the language of the statute. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). If the statutory language is unambiguous, we must give effect to the language and do not use other rules of statutory construction. *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). If the legislative intent is not clear from the statute, we consider other factors, such as the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose. *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991).

¶ 13 The right to create a will is statutory and the Legislature determines the requirements necessary to make a valid testamentary document. *Gonzalez v. Satrustegui*, 178 Ariz. 92, 97, 870 P.2d 1188, 1193

(App.1993). A will that does not comply with statutory requirements is not valid, even if it accurately reflects the wishes of the testator. *Id.*

¶ 14 Marc argues that, whether he signed the codicil on August 7 as he testified, around August 15 as suggested by Ted's counsel in closing argument, or at some later time before filing his application for informal probate on September 16, he signed the codicil as a witness within a reasonable time of Bernard's execution of the codicil, as required by A.R.S. § 14–2502(A)(3) (1995). He contends that the superior court erred in deciding that the codicil would not be valid if Marc signed it after Bernard's death.

¶ 15 Arizona Revised Statutes § 14–2502(A)(3) states that a will shall be "[s]igned by at least two people, each of whom signed within a reasonable time after that person witnessed either the signing of the will ... or the testator's acknowledgment of that signature or acknowledgment of the will." The superior court acknowledged the "reasonable time" requirement, but also determined that witnesses must sign the will prior to the testator's death.

¶ 16 In deciding the statute required that Marc sign the codicil before his father's death, the superior court appears to have relied on *Gonzalez.* In *Gonzalez*, a couple agreed to make joint and reciprocal wills. *Id.* at 95, 870 P.2d at 1191. After completing will forms received by mail, they took the forms to a bank and signed them in the presence of each other and a notary, who notarized their signatures. *Id.* No witnesses signed the forms. *Id.* After one of the parties died, his sister challenged the validity of the will on the grounds that it failed to comply with the formal requirements of A.R.S. § 14–2502 that a will be signed by two witnesses. *Id.* The purported beneficiary of the disputed will argued that because she observed the testator sign the will, she also could sign the will as a witness even as late as during the litigation. *Id.* at 98, 870 P.2d at 1194. This Court disagreed and concluded that a person could not sign a will as a witness after the testator's death. *Id.* at 99, 870 P.2d at 1195.

¶ 17 At the time, A.R.S. § 14–2502 (1975) provided:

> Except as provided for holographic wills, ... every will shall be in writing signed by the testator or in the testator's name by some other person in the testator's presence and by his direction, and shall be signed by at least two persons each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will.

*Gonzalez,* 178 Ariz. at 97, 870 P.2d at 1193. This Court noted that requiring signatures of attesting witnesses guarded against fraudulent wills and provided a means of proving authenticity. *Id.* at 97, 870 P.2d at 1193. We reasoned that allowing witnesses to sign a will after the testator's death would undermine the safeguards against fraud and mistake intended by the statute and that while fraud or mistake may or may not be present in any particular case, the rule requiring witnesses to sign the will prior to the testator's death "is prophylactic and requires uniform application." *Id.* at 99, 870 P.2d at 1195.

¶ 18 Subsequent to the decision in *Gonzalez,* the Arizona Legislature repealed the then-existing version of the statute and enacted the current version, which is based on the corresponding provision, § 2–502, of the *Uniform Probate Code* ("UPC"). The current version of the statute requires that witnesses sign within a reasonable time of observing the testator's signing or acknowledgment of his will; the statute is silent as to whether that reasonable time may or may not extend beyond the testator's death.

■ ¶ 19 The UPC, however, addresses the question of whether a witness may sign a will after the testator's death. Although the UPC provision, like A.R.S. § 14–2502, does not expressly authorize a witness to sign after the testator's death, the official comment to the UPC provision notes that the section does not require a witness to sign a will before the testator's death. Specifically, the comment states:

> The witnesses must sign as witnesses, and must sign within a reasonable time after having witnessed the signing or acknowledgment. There is, however, no require-

ment that the witnesses sign before the testator's death; in a given case, the reasonable-time requirement could be satisfied even if the witnesses sign after the testator's death.

Unif. Probate Code § 2–502 cmt. (a)(3) (revised 1990). Although the comment to the UPC is not binding on this Court, it does provide guidance in our statutory interpretation. *Estate of Wood,* 147 Ariz. 366, 368, 710 P.2d 476, 478 (App.1985).

¶ 20 Arizona adopted the revised version of UPC § 2–502 as the current A.R.S. § 14–2502. Minutes of a judiciary committee meeting considering the proposed revision reflect that the change to the then-existing Arizona statute was recommended by a committee of the State Bar of Arizona "in order to conform Arizona law with revisions made to the Uniform Probate Code in 1990." Minutes of Committee on Judiciary, 41st Leg., 2d Reg. Sess. (Ariz. Mar. 15, 1994).

¶ 21 Marc argues that in enacting the revised A.R.S. § 14–2502, the Legislature eliminated the bright line rule established by *Gonzalez* and relied on by the superior court requiring a witness to a will to sign the will before the testator dies. The statutory revision requires us to revisit the decision in *Gonzalez.* In *Gonzalez,* we interpreted a statute that had no provision for when a witness was required to sign a will. In the absence of any specific direction from the Legislature in the language of the statute, we considered the purpose of the statute, which was to prevent fraud or mistake. We determined that this purpose would be best achieved by adopting a rule, to be uniformly applied, that witnesses must sign a will prior to the death of the testator. *Gonzalez,* 178 Ariz. at 99, 870 P.2d at 1195.

¶ 22 The Legislature has now prescribed a time frame within which a witness must sign a will: within a reasonable time. The language of the statute does not limit that reasonable time to a time before the decedent's death and the comment to the UPC provision on which it is based expressly notes that a witness signing after the testator's death is not prohibited. In light of the legislative history and the comment to UPC § 2–502,

we hold that the Legislature has superseded *Gonzalez.*

¶ 23 Ted asserts that the revision to A.R.S. § 14–2502 requiring that witnesses sign a will within a reasonable time was not a substantive change. He argues that a reasonable time requirement had already been read into statutes similar to the pre-amended version of A.R.S. § 14–2502 in other jurisdictions. *In re Estate of Royal,* 826 P.2d 1236 (Colo.1992); *In re Estate of Mikeska,* 140 Mich.App. 116, 362 N.W.2d 906 (1985); *In re Estate of Flicker,* 215 Neb. 495, 339 N.W.2d 914 (1983); *Rogers v. Rogers,* 71 Or.App. 133, 691 P.2d 114 (1984). These cases do not, however, address the circumstances presented here. As in *Gonzalez,* these cases interpreted statutes in which the respective legislatures were silent as to a time frame within which the witnesses were required to sign. Our current statute requires a witness to sign within a reasonable time without further limitation. Moreover, the statute is based on UPC § 2–502 and the corresponding comment states that the provision does not require signing before the testator has died. In fact, the court in one of the cases cited by Ted suggested that its decision would be different under a statute based on the amended version of UPC § 2–502. *Royal,* 826 P.2d at 1238 n. 3.

¶ 24 Ted also contends that the comment to UPC § 2–502 is inapplicable because Arizona did not adopt the UPC's full meaning of § 2–502 when it rejected a separate section, § 2–503. We disagree. Arizona adopted all of the provisions of UPC § 2–502, although it moved one subsection concerning the validity of holographic wills to another statutory section. *See* A.R.S. § 14–2503. Ted is correct that the Legislature did not adopt UPC § 2–503, which provides that a document not executed in compliance with the requirements of § 2–502 could still be treated as being in compliance under certain circumstances. The UPC, however, contains separate comments for §§ 2–502 and 2–503. Ted fails to explain how the comment to § 2–502 is related to § 2–503 such that rejection of § 2–503 invalidates the comment to § 2–502.

¶ 25 Moreover, the Legislature's rejection of § 2–503 demonstrates that it did not simply adopt the UPC provisions wholesale, but considered individual provisions and modified

the UPC as it deemed appropriate for implementation in Arizona. This supports an interpretation that the Legislature accepted the construction of the reasonable time provision contained in the comment. Had the Legislature disapproved of the interpretation advanced in the comment, it easily could have inserted into the Arizona statute the requirement that witnesses sign within a reasonable time prior to the testator's death. Consistent with UPC § 2–502, it required only that the signature be affixed within a reasonable time of witnessing the testator's signature or acknowledgment of the will.

¶ 26 Further, the portion of the comment to § 2–502 pertinent to our analysis is included in a section of the comment specifically addressing § 2–502(a)(3), which is substantively identical to A.R.S. § 14–2502(A)(3). The language of the comment is relevant to the reasonable time requirement contained in both the UPC and the Arizona versions of the provision. The comment therefore applies to the language at issue.

¶ 27 Ted also argues that precluding witnesses from signing a will after the testator's death represents good public policy and should be upheld. A will is a creature of statute and the Legislature determines the requirements necessary to execute one. *Estate of Muder*, 159 Ariz. 173, 174, 765 P.2d 997, 998 (1988). The Legislature has adopted the UPC view that witnesses may sign a will within a reasonable time, and has not otherwise modified that requirement. We recognize that the concerns expressed in *Gonzalez* regarding fraud or mistake when a witness signs after the testator dies remain valid. These concerns, however, do not support ignoring the effect of the legislative change to the statute. Nor are the protections against fraud and mistake significantly undermined by the statutory revision. The revised statute does not simply permit signing after the testator's death, but imposes a requirement that witnesses sign within a reasonable time. Consequently, under the circumstances of any given case, the fact finder will determine whether any delay in signing the will was reasonable, affording the protection against fraud and mistake discussed in *Gonzalez*.

¶ 28 Although the superior court recognized the statutory requirement that a witness sign the will within a reasonable time, the court, as fact finder, appears to have focused on whether Marc signed the codicil prior to Bernard's death. The court did not determine whether Marc signed the codicil within a reasonable time. Issues of reasonableness are generally questions of fact. *Trustmark Ins. Co. v. Bank One, Ariz., NA,* 202 Ariz. 535, 541, 48 P.3d 485, 491 (App. 2002). Because the court did not make this factual determination, we remand to the superior court to determine whether Marc signed as a witness within a reasonable time.

## CONCLUSION

¶ 29 We hold that the requirement in A.R.S. § 14–2502 that a witness to a will sign the document within a reasonable time permits a witness to sign the will after the testator's death, provided the signing occurs within a reasonable time after witnessing the testator's signature or acknowledgment of the will. We therefore reverse the judgment and remand this case for the fact finder to determine whether Marc signed as a witness to the codicil within a reasonable time.

CONCURRING: PATRICK IRVINE and JON W. THOMPSON, Judges.