IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Estate of<br>BERT W. HOOK, | ) ) | No. 73102-5-I |
| Deceased. | ) ) ) | DIVISION ONE |
| JAMES ATKINSON, | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | |
| | ) | PUBLISHED OPINION |
| ESTATE OF BERT W. HOOK, JERRY<br>HOOK, Personal Representative, | ) ) | FILED: May 9, 2016 |
| Respondent. | ) ) | |

BECKER, J. — A will is not "executed" under RCW 11.12.020 until the occurrence of the last formal act necessary to make the will valid. Here, although the testator and one witness signed a will in Arizona, the second witness signed it in Washington. Therefore, the will was executed in Washington, not in Arizona. The will is not valid in Washington because the second witness did not sign in the testator's presence.

At issue is an order granting summary judgment. To review an order granting summary judgment, we engage in the same inquiry as the trial court. We will not resolve factual issues but rather must determine if a genuine issue exists as to any material fact. All inferences are construed in the light most

favorable to the nonmoving party. In re Estate of Black, 153 Wn.2d 152, 160-61, 102 P.3d 796 (2004).

The will in question was signed in Arizona by Bert Hook shortly before his death. Bert Hook was an unmarried man with no children. He maintained a residence in eastern Washington. He usually spent winters in a small town in Arizona. In 1988, Bert executed a valid Washington will, and in 1999, he added a valid codicil. These documents, which we will refer to as "the 1988 will," devised all of Bert's estate to Jerry Hook, his older brother and only sibling. Jerry was designated as personal representative.

In September 2011, at the age of 77, Bert underwent heart surgery in Spokane, Washington. After three weeks in an inpatient rehabilitation center, Bert was discharged to stay with Jerry in western Washington. Within a few days, Bert wanted to leave. Bert asked James Atkinson, a longtime friend who was then in Arizona, to come and get him. Atkinson drove up from Arizona with another friend, Anna Levitte. They took Bert to eastern Washington to help him close up his residence. The three then departed for Arizona, where Bert had his own residence in a rural airpark.

In January 2012, Bert prepared a new written will, which we will refer to as "the Atkinson will." The Atkinson will revokes the 1988 will and names Atkinson as the personal representative. The beneficiaries include Atkinson, Levitte, Jerry Hook, and several other individuals.

2

On February 13, 2012, Bert went with Levitte to the office of Linda Darland, a notary public. Levitte and Darland watched Bert sign the Atkinson will. Darland then signed the will and applied her notary seal.

On February 18, 2012, Bert Hook committed suicide in Arizona. Atkinson notified Jerry Hook and informed him that Bert had made a new will.

Atkinson contacted David Boswell, Bert's attorney in Spokane, about probating the Atkinson will. Atkinson and Levitte drove to Spokane on February 27, left the Atkinson will with Boswell for his review, and returned to Arizona.

On March 9, 2012, Jerry Hook petitioned the San Juan County Superior Court for an order admitting the 1988 will to probate. The petition was granted, and the court issued letters testamentary to Jerry Hook on March 12.

Meanwhile, Boswell discovered that under Arizona law, a will signed by a testator is valid if it is also signed by two witnesses within a reasonable time. On March 29, 2012, Levitte traveled to Spokane and signed the Atkinson will.

On April 4, 2012, Atkinson filed a petition in the superior court of San Juan County contesting the 1988 will on the basis that the Atkinson will expressly revoked the 1988 will. Atkinson moved for withdrawal of the letters testamentary that had been issued to Jerry Hook. The trial court denied this motion.

On April 17, 2012, Atkinson filed an action in Arizona to probate the Atkinson will.

On July 6, 2012, the San Juan County court entered an order accepting the parties' stipulation that the "facial validity" of the Atkinson will would be determined under Arizona law.

3

On April 26, 2013, after an evidentiary hearing, the San Juan County court entered an order determining that Washington was Bert Hook's domicile at the time of his death. As a result of this determination, which is unchallenged on appeal, the Arizona court stayed the probate action commenced by Atkinson and eventually dismissed it. See ARIZ. REV. STAT. § 14-3202.

On May 24, 2013, Jerry Hook moved for partial summary judgment, arguing that the Atkinson will was invalid under Arizona law because Darland signed the will as a notary, not as a witness, and Levitte did not sign it within a reasonable time of witnessing Bert Hook's signature. On July 26, 2013, the trial court denied this motion, finding there were factual issues with respect to whether the Atkinson will was validly executed under Arizona law.

On February 12, 2014, Jerry Hook filed a second motion for partial summary judgment. This time he argued that the will was invalid under Washington law. He asked the court to vacate the stipulation to Arizona law. The court denied the motion. Jerry Hook moved for reconsideration. On July 11, 2014, the court granted reconsideration and ruled that the Atkinson will was executed in Washington, not Arizona, and its admission to probate was dependent upon compliance with the formalities of Washington law, not Arizona law. Because the Atkinson will is plainly invalid under Washington law, the court dismissed Atkinson's will contest with prejudice. As a result, the letters testamentary issued to Jerry Hook remain in effect and Bert Hook's estate will be probated under the 1988 will. Atkinson appeals.

## MEANING OF "EXECUTED"

Atkinson contends that the Atkinson will was executed in Arizona, is valid under Arizona law, and must be given effect in Washington as the last expression of Bert Hook's wishes.

The starting point is Washington's Statute of Wills, RCW 11.12.020. This statute "describes the proper execution of all wills." Estate of Black, 153 Wn.2d at 164.

> **Requisites of wills—foreign wills.** (1) Every will shall be in writing signed by the testator or by some other person under the testator's direction in the testator's presence, and shall be attested by two or more competent witnesses, by subscribing their names to the will, or by signing an affidavit that complies with RCW 11.20.020(2), while in the presence of the testator and at the testator's direction or request: PROVIDED, That a last will and testament, executed in the mode prescribed by the law of the place where executed or of the testator's domicile, either at the time of the will's execution or at the time of the testator's death, shall be deemed to be legally executed, and shall be of the same force and effect as if executed in the mode prescribed by the laws of this state.
> (2) This section shall be applied to all wills, whenever executed, including those subject to pending probate proceedings.

RCW 11.12.020.

The Atkinson will was not attested to by Levitte, the second witness, in the presence of Bert Hook.[1] For this reason, the Atkinson will does not satisfy the formalities required of Washington wills by the first part of RCW 11.12.020(1). Unless the proviso for foreign wills applies, the Atkinson will cannot be given effect.

---

[1] It is assumed for purposes of summary judgment that the signature of Darland, the notary, is one attestation by a competent witness.

Under the proviso, a will "executed in the mode prescribed by the law of the place where executed" will be given effect in Washington. For example, a holographic will is effective in Washington if it is valid in the state of the testator's domicile. In re Wegley's Estate, 65 Wn.2d 689, 690, 399 P.2d 326 (1965).

Atkinson contends the will is legally enforceable in Washington because it is valid in Arizona. The Arizona statute requires two witnesses for execution, but it does not require that the witnesses sign in the presence of the testator. Witnesses need only sign "within a reasonable time" after witnessing the testator's signature or acknowledgement.

> **Execution; witnessed wills; holographic wills**
> **A.** Except as provided in §§ 14-2503, 14-2506 and 14-2513, a will shall be:
> 1. In writing.
> 2. Signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction.
> 3. Signed by at least two people, each of whom signed within a reasonable time after that person witnessed either the signing of the will as described in paragraph 2 or the testator's acknowledgment of that signature or acknowledgment of the will.
> **B.** Intent that the document constitute the testator's will can be established by extrinsic evidence, including, for holographic wills under § 14-2503, portions of the document that are not in the testator's handwriting.

ARIZ. REV. STAT. ANN. § 14-2502. As construed by an Arizona appellate court, the Arizona statute "does not preclude a witness from signing a testamentary document after the testator has died." In re Estate of Jung, 210 Ariz. 202, 203, 109 P.3d 97 (Ariz. Ct. App. 2005). It requires "only that the signature be affixed within a reasonable time of witnessing the testator's signature or acknowledgment." Estate of Jung, 210 Ariz. at 207.

If the validity of the Atkinson will is assessed under the Arizona statute quoted above, as Atkinson contends it should be, summary judgment was improperly granted. Levitte signed the will 45 days after she witnessed the signing of the will by Bert Hook. Conceivably, further proceedings would determine that 45 days is "within a reasonable time" and that the signatures of Levitte and Darland satisfy the Arizona statute.

But the proviso for foreign wills in RCW 11.12.020(1) allows the validity of the Atkinson will to be assessed under the Arizona statute only if Arizona was the "place where executed." The preliminary and dispositive issue, then, is the meaning of the word "executed" as used in RCW 11.12.020. Atkinson contends a will is "executed" once the testator has signed it. He claims the Atkinson will was executed in Arizona on February 13, 2012, when Bert Hook signed it in the presence of Levitte and Darland.

The meaning of a statute is a question of law reviewed de novo. The court's fundamental objective is to ascertain and carry out the legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Examination of the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found, is appropriate as part of the determination whether a plain meaning can be ascertained. Dep't of Ecology, 146 Wn.2d at 10; see also Estate of Black, 153 Wn.2d at 164. The statutory context must be taken into account. Dep't of Ecology, 146 Wn.2d at 11.

Where the legislature has not defined a term, we may look to dictionary definitions. Cornu-Labat v. Hosp. Dist. No. 2 Grant County, 177 Wn.2d 221, 231-32, 298 P.3d 741 (2013). Both parties cite dictionary definitions to the effect that "execute" means to make a document valid or legal by signing. See, e.g., BLACK'S LAW DICTIONARY 689 (10th ed. 2014) ("To make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form"). That definition is useful, but it does not go far enough to support Atkinson's assertion that a testator's signature on a will is enough by itself to execute the will.

The trial court concluded that the execution of a document means completing all of the steps necessary to make the document a legal instrument. By this reasoning, a will is not "executed" until the occurrence of the last formal act necessary to make the will valid. We agree and hold that the meaning of the word "executed" in RCW 11.12.020 comprises the acts of the witnesses as well as the act of the testator.

That this is the plain meaning of "executed" in RCW 11.12.020 is demonstrated by examining a related statute, RCW 11.20.070(1). In the case of a lost or destroyed will, "the court may take proof of the execution and validity of the will and establish it, notice to all persons interested having been first given." RCW 11.12.070(1). The use of RCW 11.12.020 is required to determine whether a lost will was properly executed under RCW 11.20.070. Estate of Black, 153 Wn.2d at 164. In Estate of Black, it was clear that the lost will had been signed by the testator, but it was unclear whether the document had been signed by

more than one attesting witness. The court held that proof of a signature by a second attesting witness was required to complete the formalities of execution. Estate of Black, 153 Wn.2d at 166.

The formalities of execution under both Washington and Arizona law include two witnesses who have either "attested" or "signed" the will. RCW 11.12.020(1); ARIZ. REV. STAT. ANN. § 14-2502(3). The Atkinson will, although signed by Bert Hook in Arizona, could not be a valid or legal instrument under Washington or Arizona law until it had the signatures of two witnesses. The signature of the second witness was placed on the Atkinson will on March 29, 2012, when Levitte signed it in Spokane. The trial court reasoned that while "significant acts toward the execution" of the Atkinson will occurred in Arizona, it "only became an executed document when Ms. Levitte signed it and she signed it in Washington."

We affirm the trial court's reasoning. Because Arizona was not the "place where executed," RCW 11.12.020(1), the proviso in the statute for foreign wills does not apply. The Atkinson will is a Washington will, not a foreign will. As a Washington will, it is invalid. There is no second witness who attested to the Atkinson will while in the presence of Bert Hook and at his direction or request. The Atkinson will cannot be admitted to probate in Washington either as a foreign will or as a Washington will.

Atkinson opposes this result with the argument that Bert Hook's last wishes expressed in the Atkinson will may not be defeated by a technical construction of the term "executed." He derives this argument from In re Estate

9

of Elliott, 22 Wn.2d 334, 351, 156 P.2d 427 (1945). In that case, the court stressed the importance of carrying out the expressed will of the testator.

> "Courts will not, by technical rules of statutory or other legal construction, defeat the right of the testator to have effect given to the latest expression of his testamentary wishes."
>
> . . .
>
> "Statutes should not be construed so as to defeat the will of the testator, unless such construction be absolutely required. Neither should the will of a testator be defeated, as here, by the carelessness of the persons whose duty it was to present the codicil for probate. It is not their rights which are taken away, but the right of the testator to have his will carried out."

Estate of Elliott, 22 Wn.2d at 351, quoting In re Estate of Bronson, 185 Wash. 536, 549-50, 55 P.2d 1075 (1936) (Beals, J., dissenting). See also RCW 11.12.230 (courts must have "due regard" for the testator's intent).

Atkinson's reliance on Estate of Elliott is misplaced. He quotes the above passage out of context. Read in full, Estate of Elliott shows that a court will not concern itself with carrying out a testator's wishes expressed in a will unless it is first established that the will is properly executed and admissible in probate.

In Estate of Elliott, more than seven months after the decedent's first will was admitted to probate, the appellant petitioned to have a later will admitted to probate. The trial court rejected the appellant's petition because it was outside the statute of limitations for a will contest. The Supreme Court reversed, holding that the statute of limitations for a will contest is inapplicable when a later will is offered. A court of probate "has inherent authority at any time, while an estate is still open, to admit to probate a later will than that theretofore probated." Estate of Elliott, 22 Wn.2d at 361.

In reaching that conclusion, the court said that "the right to dispose of one's property by will is not only a valuable right but is one assured by law, and will be sustained whenever possible." Estate of Elliott, 22 Wn.2d at 350. The intent of the testator is "'a fundamental maxim, the first and greatest rule, the sovereign guide, the polar star, in giving effect to a will.'" Estate of Elliott, 22 Wn.2d at 351, citing JOHN R. ROOD, A TREATISE ON THE LAW OF WILLS, § 413, at 352 (2d ed. 1926). But the court qualified these statements by adding that "*the instrument must, of course, first be admitted to probate*" and the court will give effect to "the latest and final expression of the decedent's testamentary wishes, *if such result can be obtained within the established rules of law.*" Estate of Elliott, 22 Wn.2d at 351 (emphasis added).

The established rules of law include the formalities of executing a will in compliance with RCW 11.12.020. In Estate of Elliott, it was undisputed that the competing wills were both properly executed. That is not the case here. Because the Atkinson will was not properly executed, it cannot be admitted to probate within the established rules of law in Washington. Therefore, the wishes of Bert Hook expressed therein will not be given effect.

## LETTERS TESTAMENTARY

In April 2012, the trial court denied Atkinson's motion to revoke the letters testamentary that appointed Jerry Hook as the personal representative of Bert Hook's estate. The basis for the motion was Atkinson's assertion that the appointment of a personal representative should follow the Atkinson will rather than the 1988 will. Atkinson argues that the letters testamentary should be

revoked because Jerry Hook was deceitful to the trial court. The alleged deceit is that when Jerry Hook submitted the 1988 will to probate, he did not disclose to the court that Atkinson had told him there was a more recent will. Because this argument was not raised below in connection with the request to revoke the letters testamentary and is unsupported by citation to relevant authority, we do not consider it.

## COUNTERCLAIMS

When Jerry Hook filed an answer to Atkinson's will contest petition, he asserted counterclaims based on allegations that Atkinson abused and financially exploited Bert Hook, a vulnerable adult. Atkinson moved to dismiss the counterclaims for lack of personal jurisdiction. The trial court denied the motion to dismiss. Atkinson contends the trial court erred by asserting in personam jurisdiction over him for the purpose of hearing the counterclaims.

As Jerry Hook points out, the denial of the motion to dismiss the counterclaims for lack of personal jurisdiction is not an appealable final order under RAP 2.2(a). The counterclaims are still pending in the superior court. Jerry Hook nevertheless joins Atkinson in asking this court to decide the issue of personal jurisdiction, an issue that is not properly before this court on direct appeal, to avoid a second appeal. As a basis for discretionary review, Jerry Hook invokes RAP 1.2(a) ("rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits").

Discretionary review is not granted under RAP 1.2(a). The criteria for discretionary review are stated in RAP 2.3(b). Neither party has addressed RAP

2.3(b). We decline to review the order denying the motion to dismiss Jerry Hook's counterclaims.

ATTORNEY FEE REQUESTS

Both parties have requested an award of attorney fees on appeal under RCW 11.96A.150(1). Jerry Hook additionally asks for fees under RCW 11.24.050.

When Atkinson's will contest petition was dismissed in the trial court, it was not apparent that Atkinson had a right to an immediate appeal. The trial court refused to enter findings under CR 54(b) and denied certification for discretionary review under RAP 2.3(b)(4). Presumably because the case had not ended, neither party made a request for attorney fees in the trial court. Later, however, this court allowed Atkinson to proceed with a direct appeal, having determined that the order dismissing the will contest was an appealable final order under RAP 2.2(a). See Estate of Barnard, 182 Wn. App. 692, 728, 332 P.3d 480, review denied, 339 P.2d 634 (2014).

The attorney fee statutes cited by the parties allow the court to exercise considerable discretion. The trial court, being more fully acquainted with the entire case and the parties, is in a better position than this court to exercise that discretion. Because of the posture of the present case, the trial court has not yet had the opportunity to consider whether an award of attorney fees to either party is appropriate. Under these circumstances, we decline to award attorney fees on appeal to either party and instead defer to the trial court. On remand, the trial court may hear requests for attorney fees, including fees for this appeal.

Affirmed and remanded for further proceedings consistent with this opinion.

Becker, J.

WE CONCUR:

Spearman, J.

Schindler, J.