IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

WENDI CLECKNER,
*Plaintiff/Appellant*,

*v.*

ARIZONA DEPARTMENT OF
HEALTH SERVICES, et al.,
*Defendants/Appellees*.

No. 1 CA-CV 17-0749
FILED 1-10-2018

Appeal from the Superior Court in Maricopa County
No. CV2015-053512
The Honorable John R. Hannah, Jr., Judge

**AFFIRMED**

COUNSEL

Law Office of Julie Gunnigle, PLLC, Scottsdale
By Julie R. Gunnigle
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Aubrey Joy Corcoran
*Counsel for Defendants/Appellees*

**OPINION**

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Maria Elena Cruz and Judge Randall M. Howe joined.

**J O H N S E N**, Judge:

**¶1**        A midwife appeals the superior court's dismissal of her complaint challenging rules the Arizona Department of Health Services issued regulating the practice of midwifery.  We conclude the Department had authority to issue the rules and affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        Under Arizona law, anyone other than a registered nurse, a licensed physician or someone supervised by a physician usually must be licensed as a midwife to deliver a baby or to provide "health care related to pregnancy, labor, delivery and postpartum care of the mother and her infant."  Ariz. Rev. Stat. ("A.R.S.") §§ 36-751 (2018), -752 (2018).[1]  The legislature has granted the Department broad authority to "[d]efine and describe . . . the duties and limitations of the practice of midwifery [and] [a]dopt standards with respect to the practice of midwifery designed to safeguard the health and safety of the mother and child."  A.R.S. § 36-755(B) (2018).  In 1994, the Department issued detailed rules for the licensing of midwives, circumscribing the services a midwife may perform and imposing requirements for documenting and reporting patient information.  *See generally* Ariz. Admin. Code ("A.A.C.") R9-16-101 to -117.

**¶3**        In 2012, after lobbying by the Arizona Association of Midwives, the legislature passed and the governor signed House Bill ("H.B.") 2247, which, in relevant part, provided as follows:

> A.  On or before July 1, 2013, the [Department] shall consider adopting rules regarding midwifery that concern the following:
>
> 1.  Reducing the regulatory burden on midwives who are licensed [by the Department] . . . and streamlining the regulation process.
>
> 2.  Consistent with the requirements of title 36, chapter 6, article 7, Arizona Revised Statutes, revising the midwifery scope of practice pursuant to subsections B, C and D of this section.

---

[1]      Absent material revision, we cite the current version of a statute or rule.

* * *

B.  Any party that is interested in increasing the scope of practice of midwifery must submit a report to the director of the [Department] that contains the following:

1.  A definition of the problem and why an increase in the scope of practice is necessary.

2.  The available evidence-based research that demonstrates that the interested current practitioners are competent to perform the proposed scope of practice.

3.  The extent to which an increase in the scope of practice may harm the public.

C.  On receipt of the report prescribed in subsection B of this section, the director shall appoint a midwifery scope of practice advisory committee to assist the director in adopting and amending rules related to midwifery scope of practice.

H.B. 2247, 2012 Ariz. Sess. Laws, ch. 93, § 1 (2d Reg. Sess.).  The measure also provided that, upon receipt of a report proposing an increase in the scope of practice, the "scope of practice advisory committee" must hold a public meeting to receive comments and thereafter must make recommendations concerning "proposed rules relating to a change in the scope of practice."  H.B. 2247 § 1(C) & (E).  Finally, upon receipt of the advisory committee's recommendations, the Department "shall conduct a public meeting to receive comment on the final draft of the proposed rules." H.B. 2247 § 1(E).

¶4          After receiving two reports urging expansion of the midwifery scope of practice, the Department created an advisory committee and ultimately issued revised regulations in 2013.  *See* 19 Ariz. Admin. Reg. ("A.A.R.") 1805 (eff. July 1, 2013); 2012-2013 Scope of Practice Advisory Committee – Home, https://www.azdhs.gov/licensing/special/midwives/index.php#committees-spac-home (last visited Nov. 28, 2018).  Wendi Cleckner, a midwife, challenged the rules by filing a complaint in superior court alleging the regulations exceeded the Department's authority under H.B. 2247.[2]  She

_____

2       Cleckner was a member of the advisory committee the Department created to consider the revisions.  The advisory committee met seven times

asserted the revised rules narrow the midwifery scope of practice and thereby violate A.R.S. § 41-1030(C) (2018) because H.B. 2247 authorized the Department only to *increase* the midwifery scope of practice, not to narrow it.

¶5         The Department moved to dismiss the complaint pursuant to Arizona Rule of Civil Procedure 12(b).  Over Cleckner's objection, the superior court dismissed four of her eight claims and entered final judgment under Arizona Rule of Civil Procedure 54(b).  Cleckner timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2018) and -2101(A)(1) (2018).

## DISCUSSION

### A.    Standard of Review.

¶6         We review *de novo* a superior court's ruling on a motion to dismiss.  *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8 (2012).  In determining whether a complaint states a claim for relief, "Arizona courts look only to the pleading itself." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008).  Courts must "assume the truth of the well-pled factual allegations" and resolve all reasonable inferences in the plaintiff's favor. *Id*. Mere conclusory statements, however, "are insufficient to state a claim upon which relief can be granted." *Id*.  Dismissal of a complaint for failure to state a claim is appropriate if "as a matter of law . . . the plaintiff would not be entitled to relief under any interpretation of the facts." *Bunker's Glass Co. v. Pilkington PLC*, 202 Ariz. 481, 484, ¶ 9 (App. 2002).

### B.    The Department's Rulemaking Power Under H.B. 2247.

¶7         As an initial matter, this court sought supplemental briefs concerning the relevance to this appeal, if any, of A.R.S. § 12-910(E), as amended in 2018.  *See* 2018 Ariz. Sess. Laws, ch. 180, § 1 (2d Reg. Sess.).  In their briefs, the parties disagree about whether the amendment to § 12-910(E) applies when a regulated party challenges an agency's rulemaking power.  We need not decide that issue, however, because we conclude that whether the rules the Department issued are within its authority under H.B. 2247 is a question we review *de novo*, without deference to the Department. *See Dioguardi v. Superior Court (Ariz. Bd. of Med. Exam'rs)*, 184 Ariz. 414, 417

---

between November 2012 and June 2013 and analyzed data on patient outcomes, evaluated academic literature on midwifery, discussed draft rules and received comments from the public.

(App. 1995), *as corrected on reconsideration* (Dec. 29, 1995), *corrected* (Jan. 17, 1996).

¶8        "[T]he powers and duties of administrative agencies . . . are strictly limited by the statute creating them." *Boyce v. City of Scottsdale,* 157 Ariz. 265, 267 (App. 1988).  Under A.R.S. § 41-1030(C)(1) and (C)(2), "[a]n agency shall not . . . [m]ake a rule under a specific grant of rulemaking authority that exceeds the subject matter areas listed in the specific statute authorizing the rule" or "[m]ake a rule under a general grant of rulemaking authority to supplement a more specific grant of rulemaking authority." Whether an agency's rule is within the agency's statutory charter is a question "of statutory interpretation, which is the subject of de novo judicial review." *Dioguardi*, 184 Ariz. at 417.

¶9        In interpreting a statute, we look first to its language, *In re Estate of Jung*, 210 Ariz. 202, 204, ¶ 12 (App. 2005), and try to give meaning to each word, phrase, clause and sentence so that no part of the legislation will be void, inert or trivial, *see Ariz. State Univ. Bd. of Regents v. Ariz. State Ret. Sys.*, 242 Ariz. 387, 389, ¶ 7 (App. 2017).  We seek to apply a sensible construction that avoids absurd results. *State v. Gonzales*, 206 Ariz. 469, 471, ¶ 12 (App. 2003).  "If the statutory language is unambiguous, we must give effect to the language and do not use other rules of statutory construction." *Jung*, 210 Ariz. at 204, ¶ 12.

¶10        Cleckner argues H.B. 2247 allowed the Department only to issue rules increasing the midwifery scope of practice but that the Department's new rules do the opposite.[3]  She points to § 1(A) of H.B. 2247, which directed the Department to "revis[e] the midwifery scope of practice

_____

[3]        Cleckner's complaint alleged that the new rules effectively allow a midwife to care only for women with normal menstrual periods because it links many required tasks to the duration of gestation, which the regulation defines as "the length of time from conception to birth, as calculated from the first day of the last normal menstrual period." *See* A.A.C. R9-16-101(20); *see also* AA.C. R9-16-108(I).  Cleckner also alleged other changes in A.A.C. R9-16-108(B), (D)(2) and (J)(4) reduce the scope of practice by imposing new certification requirements for a midwife to attend a breech birth and by requiring cervical exams at specified intervals during labor.  The Department argued in the superior court that the regulations do not narrow the permissible scope of the midwifery practice, but we will assume the truth of Cleckner's contrary allegations without deciding them. *See Cullen*, 218 Ariz. at 419, ¶ 7.

pursuant to subsections B, C and D," and asserts that directive permitted the Department only to increase the scope of practice – not to decrease it – because § 1(B) contemplated an "increase" but not a "decrease."  H.B. 2247 § 1(A)(2), (B).  The Department, on the other hand, argues the word "revise" in § 1(A)(2) granted it broad authority to change the rules and that subsections B, C and D merely described the process it would need to follow if someone proposed an increase in the scope of the practice of midwifery.

¶11        We begin with the first sentence of the measure, which directed the Department to "consider adopting rules regarding midwifery that concern . . . revising the midwifery scope of practice pursuant to subsections B, C and D of this section."  H.B. 2247 § 1(A)(2).[4]  Notably, the measure did not require the Department to issue *any* new or amended rules, but only to "consider adopting" rules.  Moreover, contrary to Cleckner's contention, nothing in that mandate specified that the Department must *increase* "the midwifery scope of practice."

¶12        Cleckner's argument is anchored in § 1(A)(2)'s reference to § 1(B), which she contends reflected the legislature's intent that the Department adopt rules that would expand the permissible scope of midwifery practice, not restrict it.  Section 1(B) stated that "[a]ny party that is interested in increasing the scope of practice of midwifery must submit a report" to the Department that identifies "the problem and why an increase in the scope of practice is necessary," including how it would benefit consumers and the "extent to which an increase in the scope of practice may harm the public."  H.B. 2247 § 1(B)(1), (3).  Upon submission of such a report, § 1(C) required the Department to "appoint a midwifery scope of practice advisory committee to assist the director in adopting and amending rules related to midwifery scope of practice."  H.B. 2247 § 1(C).  And § 1(D) provided that advisory committee members would not be compensated. H.B. 2247 § 1(D).

¶13        As shown, subsections B, C and D only imposed procedural requirements on the Department's rulemaking; they did not limit its discretion in determining the substance of any new or amended rules.

---

[4]        The measure also directed the Department to consider adopting rules "[r]educing the regulatory burden" on licensed midwives and "streamlining the regulation process," H.B. 2247 § 1(A)(1).  It further directed the Department to consider "adopting national licensure testing standards," H.B. 2247 § 1(A)(3).  On appeal, Cleckner makes no argument concerning those provisions.

Cleckner relies on the use of the word "increase" in § 1(B), but that provision merely ensured that advocates of expanding midwifery services would have a voice in the rulemaking process the measure contemplated. H.B. 2247 § 1(B). Cleckner's argument is further undermined by § 1(E), which provided that the advisory committee would recommend proposed rules "relating to a change in the scope of practice" without specifying the nature of that change. H.B. 2247 § 1(E). In other words, contrary to Cleckner's contention, the measure did not direct the Department to expand the midwifery scope of practice, but instead allowed the Department to exercise its discretion to increase or decrease the scope of practice within the limits imposed by other law. *See supra* ¶ 2.

**¶14** Cleckner, however, asserts the legislature made plain that it intended the Department to expand the scope of midwifery when lawmakers set out the procedures (report, advisory committee, hearing) the Department must follow when it received a request to increase the scope of practice. We do not construe those provisions in H.B. 2247 as a legislative mandate to expand the scope of midwifery. To the contrary, when midwives and their supporters lobbied for an expanded scope of practice, the legislature responded by establishing a process by which the Department would apply its particular skill and expertise in considering the issues the midwives raised. *Cf. Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 209 (1947) (administrative agencies are "best equipped to make" decisions that require "administrative experience, appreciation of the complexities of the problem, realization of the statutory policies, and responsible treatment of the uncontested facts"); *State v. Ariz. Mines Supply Co.*, 107 Ariz. 199, 205 (1971) ("[D]ue to the complexity of our social and industrial activities, [courts have upheld] the authority conferred upon commissions and boards to formulate rules and regulations and to determine the state of facts upon which the law intends to make its action depend. . . . [The legislature] may . . . authorize others to do those things which it might properly, yet cannot understandingly or advantageously do itself.").

**¶15** Cleckner further argues that those who lobbied the legislature to enact H.B. 2247 were universally supportive of midwives, and asks why each of them "would enthusiastically lobby against their own interest." Because the language is clear and unambiguous, we need not consider the measure's legislative history and other means of statutory interpretation. *See Wade v. Ariz. State Ret. Sys.*, 241 Ariz. 559, 561, ¶ 10 (2017). If we were to examine the legislative history, however, we would focus on the words and actions of the legislature, not on the words of those who urged the legislature to act. *See Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 269 (1994)

("When seeking to ascertain the intent of legislators, courts normally give little or no weight to comments made at committee hearings by nonlegislators.").

**¶16** In sum, the new and amended midwifery rules issued in 2013 do not violate the statutory limits on the Department's rulemaking authority under A.R.S. § 41-1030(C)(1) or (C)(2), which, as applied here, are functionally identical. In issuing the rules, the Department neither "exceed[ed] the subject matter areas" of the authorizing statute, § 41-1030(C)(1), nor used a "general grant of rulemaking authority to supplement a more specific grant of rulemaking authority," § 41-1030(C)(2).

## CONCLUSION

**¶17** For the foregoing reasons, we affirm the superior court's dismissal of Cleckner's claims challenging the new rules.



AMY M. WOOD • Clerk of the Court
FILED: AA