NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In the Matter of the Estate of:

Michael Donovan, Deceased.

No. 1 CA-CV 25-0397 PB

FILED 03-20-2026

Appeal from the Superior Court in Maricopa County
No.  PB2024-002501
The Honorable Elizabeth T. Bingert, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Rose Law Group, Scottsdale
By Shelton L. Freeman, Austin D. Moylan
*Counsel for Appellant Lisa Donovan*

Jones, Skelton & Hochuli PLC, Phoenix
By Eileen Dennis Gilbride
*Co-Counsel for Appellants Joseph Donovan and Madeline Donovan*

Becker & House PLLC, Scottsdale
By Mark E. House, Amanda L. Barney
*Co-Counsel for Appellants Joseph Donovan and Madeline Donovan*

Andersen PLLC, Scottsdale
By Mark W. Hawkins, Kira E. Darragh
*Counsel for Appellee Holly Herberger DelCastillo*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Veronika Fabian and Vice Chief Judge David D. Weinzweig joined.

---

**B R O W N**, Judge:

¶1   Lisa Donovan, Joseph Donovan, and Madeline Donovan (collectively, "Appellants") challenge the superior court's (1) judgment dismissing a petition to reform and probate a will, and (2) denial of a motion for new trial or to alter or amend the judgment. For the following reasons, we affirm.

## BACKGROUND

¶2   The Judd Herberger Trust ("the Herberger Trust") created a trust ("Residuary Trust") for Judd Herberger's stepson, Michael Donovan, the decedent in this probate matter. The Herberger Trust required Michael to exercise his power of appointment over the Residuary Trust by specifically referencing such power and the relevant section of the Herberger Trust in his will. If he failed to do so, then upon his death the Herberger Trust required its trustee to distribute the Residuary Trust to Judd's children, including Holly Herberger DelCastillo.

¶3   Michael, who had no spouse or children, signed and executed his will at his attorney's office in August 2023. The will gave all of Michael's probate estate, excluding any property over which he had a power of appointment, to the trustee of the revocable living trust he created and directed the trustee to administer the property according to that trust. The will did not include a provision exercising the power of appointment under the Herberger Trust.

¶4   After Michael's death in February 2024, his sister Lisa petitioned the superior court for the formal probate of an *unsigned* version of Michael's will, which included this provision:

> In the Judd Herberger Trust, dated April 12, 1999, as amended, or a sub-trust thereof, I was granted a testamentary power of appointment over assets to which I am a designated beneficiary over time. If I predecease the

distribution of these assets, I now exercise that power of appointment and appoint the property subject to the power to be distributed[] [t]o my niece Madeline . . . [and to] my nephew Joseph [in equal shares].

Alternatively, Lisa sought to reform the signed will to incorporate that provision and to probate the reformed will.

¶5 Lisa's petition included a declaration by Michael's attorney explaining that Michael had signed the wrong version of the will. The declaration explained that despite Michael's expressed intention that the assets go to his niece and nephew (Lisa's children), the attorney's initial draft of Michael's will did not include the provision quoted above. The attorney revised the will, but when Michael came to sign it, the wrong version had been printed. Michael signed that version, contradicting his intention.

¶6 Lisa voluntarily withdrew her request for formal probate of the unsigned will, asserting the signed will should be reformed to reflect Michael's intent as shown by the unsigned will. DelCastillo, who would receive a share of Michael's interest in the Residuary Trust under the signed will, moved to dismiss Lisa's request to reform the signed will. The superior court granted the motion, finding the unsigned will is invalid and cannot "serve as a basis for reforming the executed will." The court refused to consider the unsigned will and the attorney's declaration as extrinsic evidence to contradict the signed will's plain language, which the court found "*expressly excludes* the power of appointment."

¶7 The court dismissed Lisa's petition with prejudice, finding the signed will unambiguously did not contain a provision that exercised the power of appointment created by the Herberger Trust. The court also denied the parties' requests for attorneys' fees, and after the court denied Appellants' post-judgment motions, this timely appeal followed. We have jurisdiction under A.R.S. § 12-2101(A)(9).

## DISCUSSION

¶8 We review de novo the dismissal of Lisa's petition. *See Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). "The Arizona Rules of Civil Procedure apply to probate proceedings" unless inconsistent with or otherwise provided by the Arizona Rules of Probate Procedure. Ariz. R. Prob. P. 4(a)(1). Dismissal is appropriate if the petitioner is not "entitled to relief under any interpretation of the facts susceptible of proof." *Coleman*, 230 Ariz. at 356, ¶ 8.

**¶9**        Appellants argue the superior court should have considered extrinsic evidence of Michael's unsigned will and his attorney's declaration stating that Michael signed and executed the wrong version of the will because of a drafting error. They contend the court needed to reform the signed will to include the provision in the unsigned will exercising the power of appointment. We reject Appellants' contention because it would require us to deviate from well-established legal principles governing the interpretation of wills.

**¶10**        One of the purposes of Arizona's Trusts, Estates, and Protective Proceedings statutes, A.R.S. §§ 14-1101 to -13118, is "[t]o discover and make effective the intent of a decedent in distribution of his property." A.R.S. § 14-1102(B)(2). "[T]he intent of the [testator] is the overriding consideration, but the intent expressed in the will is controlling." *Brewer v. Peterson*, 9 Ariz. App. 455, 460 (1969). "[T]o be effective[,] the donee's exercise of the power of appointment must comply perfectly with any formal requirements imposed by the donative instrument." *Matter of Strobel*, 149 Ariz. 213, 217 (1986). Here, it is undisputed that Michael's signed will did not exercise the power of appointment created by the Herberger Trust.

**¶11**        Appellants acknowledge that Arizona follows a no-reformation rule for wills, *see Matter of Blacksill's Estate*, 124 Ariz. 130, 132 (App. 1979), and that courts consider extrinsic evidence only when an ambiguity exists, *see In re Estate of Pouser*, 193 Ariz. 574, 578-79, ¶ 10 (1999) ("A will is ambiguous when the written language is fairly susceptible of two or more constructions." (citation modified)); *Hill v. Hill*, 37 Ariz. 406, 410 (1931) ("[Extrinsic] evidence is not admissible to alter or contradict the plain terms of the will, but, if the terms be ambiguous, [extrinsic] evidence may be [used] to determine the meaning."). Appellants concede the signed will is unambiguous. They also recognize that "in cases of clear draftsman's error, courts refuse to reform the will." *Blacksill's Estate*, 124 Ariz. at 132. Even in cases of ambiguity, extrinsic evidence is only admissible "to show what the testator meant by what he said, not to show what he intended to say." *Id.*

**¶12**        To effect Michael's "true" intent here, Appellants urge us to follow the "modern rule" as reflected in the Restatement (Third) of Property: Wills and Other Donative Transfers ("Restatement") and the Uniform Probate Code, which allow reformation of a will in cases of mistake if proved by clear and convincing evidence. *See* Restatement § 12.1 (2003) ("A donative document, though unambiguous, may be reformed to conform the text to the donor's intention if it is established . . .

4

that a mistake of fact or law, whether in expression or inducement, affected specific terms of the document."); Unif. Prob. Code § 2-805 ("The court may reform the terms of a governing instrument, even if unambiguous, to conform the terms to the transferor's intention if it is proved . . . what the transferor's intention was and that the terms . . . were affected by a mistake of fact or law, whether in expression or inducement.").

¶13        As urged by Appellants, the "modern rule" supports effectuating a testator's intent by considering extrinsic evidence when a will is unambiguous but the extrinsic evidence suggests the will's terms contradict the testator's intent.   The rationale has been explained as follows:

> When a donative document is unambiguous, evidence suggesting that the terms of the document vary from intention is inherently suspect but possibly correct.  The law deals with situations of inherently suspicious but possibly correct evidence in either of two ways.  One is to exclude the evidence altogether, in effect denying a remedy in cases in which the evidence is genuine and persuasive.  The other is to consider the evidence, but guard against giving effect to fraudulent or mistaken evidence by imposing an above-normal standard of proof.  In choosing between exclusion and high-safeguard allowance of extrinsic evidence, this Restatement adopts the latter.   Only high-safeguard allowance of extrinsic evidence achieves the primary objective of giving effect to the donor's intention.  To this end, the full range of direct and circumstantial evidence relevant to the donor's intention described in § 10.2 may be considered in a reformation action.

Restatement § 12.1 cmt. b.

¶14        While the Restatement permits considering extrinsic evidence under a heightened burden of proof, this "modern rule" urged by Appellants conflicts with Arizona law, which precludes consideration of extrinsic evidence when, as conceded here, the plain language of a will is unambiguous, *see Pouser*, 193 Ariz. at 578–79, ¶ 10; *Hill*, 37 Ariz. at 410; *see also Cornell v. Desert Fin. Credit Union*, 254 Ariz. 477, 483, ¶ 23 (2023) ("In the *absence* of binding precedent, we follow the Restatement if it sets forth sound legal policy." (emphasis added)).   Even if we believed Arizona should follow the Restatement on this topic, as an intermediate

appellate court, we are bound by the opinions of our supreme court. *See Sell v. Gama*, 231 Ariz. 323, 330, ¶ 31 (2013) (emphasizing that lower courts are bound by supreme court precedent). And we cannot depart from precedent "unless the reasons underlying it no longer exist or the [previous caselaw] was clearly erroneous or manifestly wrong." *Laurence v. Salt River Project Agric. Improvement & Power Dist.*, 255 Ariz. 95, 100, ¶ 17 (2023) (citation modified). "'[A]ny departure from the doctrine of *stare decisis* demands special justification.'" *State v. Hickman*, 205 Ariz. 192, 200, ¶ 37 (2003) (quoting *Arizona v. Rumsey*, 467 U.S. 203, 212 (1984)). Those circumstances are not present here.

**¶15** Moreover, adopting the Restatement in this area of law would undermine the legislature's role in regulating wills. *See Matter of Estate of Muder*, 159 Ariz. 173, 174 (1988) ("The right to make a will did not exist at common law. It is a statutory right."). "Because the legislature has the power to withhold or to grant the right to make a will, its exercise [of that power] may be made subject to such regulations and requirements as the legislature pleases." *Id.*; *see also In re Estate of Jung*, 210 Ariz. 202, 207, ¶ 27 (App. 2005) (recognizing the legislature's adoption of the Uniform Probate Code's view that witnesses may sign a will "within a reasonable time").

**¶16** The legislature requires a will to be signed. A.R.S. §§ 14-2502 (paper wills), -2503 (holographic wills), -2518 (electronic wills). Following the "modern rule" to permit extrinsic evidence to reform a signed will based on unsigned testamentary language would violate Arizona law requiring signatory intent. *See, e.g., In re Estate of Bixby*, ___ Ariz. ___, ___, ¶ 10, 573 P.3d 113, 117 (App. 2025) (noting the distinction between testimonial and signatory intent).

**¶17** We are not persuaded by Appellants' argument that following the "modern rule" to reform wills would align with Arizona's enactment of A.R.S. § 14-10415, which permits reformation of a trust, even in cases of unambiguity, to conform to a settlor's intent if proved by clear and convincing evidence that a mistake affected the intent and the trust's terms. Unlike wills, trusts do not necessarily need to be signed. A.R.S. § 14-10407. Thus, it is the legislature's role to decide whether to codify the "modern rule" as to wills as set forth in section 12.1 of the Restatement and section 2-805 of the Uniform Probate Code. *See Muder*, 159 Ariz. at 174; *Jung*, 210 Ariz. at 207, ¶ 27.

**¶18** Assuming the well-pled facts in the petition are true, dismissal was appropriate because Appellants failed to state a claim under

Arizona law. *See Coleman*, 230 Ariz. at 356, ¶ 8. We do not address whether the superior court erred by finding that certain alleged facts were inadmissible because they arose from a violation of the attorney-client privilege.

**¶19** DelCastillo requests attorney's fees under several statutes and ARCAP 25, asserting Lisa's appeal is groundless. We deny DelCastillo's request but award her taxable costs upon compliance with ARCAP 21.

## CONCLUSION

**¶20** We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR