IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Irrevocable Trust of<br><br>DONNA CLARK,<br><br>　　　　　　　Deceased. | No. 83996-9-I<br>(consolidated with<br>No. 84055-0-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Gary Clark is the trustee of his deceased mother's trust. The trust documents instructed that upon his mother's death, Gary was to split her trust into two separate trusts for himself and his brother Curtis. After the parties failed to reach agreement on how to divide her trust, Curtis filed a petition under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW. The parties resolved some issues at a mediation, but some issues remained unresolved, and Curtis amended the TEDRA petition to include claims of breach of the trust instrument and breach of fiduciary duty. The trial court granted Curtis's motion for partial summary judgment on the breach claims and ordered Gary to repay the trust and pay Curtis's legal fees for litigating them. Curtis and Gary continued to litigate other issues, and the court awarded fees to both from the trust.

In their cross-appeals, the two parties dispute most of the trial court's decisions and orders. We affirm the trial court's substantive decisions, including granting summary judgment on the claims of breach of fiduciary duty and breach of the trust instrument, affirm the attorneys' fees as awarded by the trial court, and award attorney fees on appeal to Curtis.

FACTS

In 2014, Donna Clark executed the Donna Clark Irrevocable Trust and a "pour over" will that added all probate assets to the Trust property upon her death. Article 2 of the Trust defined the beneficiaries as follows:

> Gary Dean Clark, born on July 18, 1966 and
> Curtis Gene Clark, born on April 14, 1969
> All references in this agreement to "my children" are references to these children.
> References in this agreement to "my descendants" refer to my children and their descendants.
> The "lifetime beneficiaries" of my trust are my children.

Gary[1] served as co-trustee with Donna until her death September 2, 2018, at which time he became the sole trustee. The Trust established a plan for administration after Donna's death:

> Section 6.01 Division of Remaining Trust Property
> My Trustee shall divide the remaining trust property into separate shares for my descendants, *per stirpes*.
> My Trustee shall administer the share for each descendant in a separate trust for the benefit of the descendant as provided below.
>
> Section 6.02 Administration of the Separate Trusts
> My Trustee shall administer the trust for each child as provided in this Section:

---

[1] Because the people involved all share the same last name, this opinion will refer to them by first name. No disrespect is intended.

> (a) Distributions of Net Income
> The Trustee shall distribute all of the net income of the
> beneficiary's trust to the beneficiary at least monthly.
> (b) Distributions of Principal
> The Trustee shall distribute to the beneficiary as much of the
> principal of the beneficiary's trust as the Trustee determines
> is necessary or advisable for the health, education,
> maintenance and support of the beneficiary.

At the time of Donna's death, the Trust contained over $1 million in investments and bank accounts, as well as three real properties located in Bellingham, Washington. The real property consisted of homes on Coronado Avenue and Waterside Lane, which were vacant, and a home on Hemmi Road occupied by Curtis and his family.

Gary and Curtis disagreed about the disposition of Trust assets. Curtis wanted the Hemmi Road property as well as half the other two real properties in his name. The brothers argued over the process for transferring title of the Hemmi Road property from the Trust to Curtis, and Gary wanted to maintain the Coronado and Waterside properties in the Trust, disbursing to Curtis only his share of the mutual funds. Gary and Curtis also argued about use of Trust property and division of the assets.

In February 2019, Gary sent a letter to Curtis's attorney stating that Curtis was $6,000 in arrears on his rent payments for the Hemmi Road property and accusing Curtis of "squatting" on the property. Curtis expressed concern about self-dealing based on Gary's use of Trust funds to pay his daughters' college tuition, personal use of a vehicle owned by the Trust, and rent-free use of the

Coronado property garage for storage. Efforts to reach an agreement to divide the Trust failed.

In July 2019, the Trust remained undivided. Curtis filed a petition under TEDRA. He requested discovery under RCW 11.96A.115, as well as Gary's removal as Trustee, reimbursement of the Trust for self-dealing payments, division of the Trust into equal shares, and attorney fees and costs. Subsequently, Curtis filed a notice of mediation in compliance with RCW 11.96A.300. Gary did not object to mediation. However, Gary filed a request for a Trust Protector as allowed under the terms of the Trust.

After a hearing, the trial court denied Gary's request for a Trust Protector due to a potential conflict of interest with the proposed appointee and the upcoming mediation. The court granted Curtis's request for discovery and reserved his request for attorney fees and costs.

Gary and Curtis engaged in mediation, signing a Civil Rule (CR) 2A agreement in December 2019. The CR 2A distributed the Hemmi Road property to Curtis, with Curtis assuming all liens and mortgages. The brothers agreed to sell the Coronado and Waterside properties, with the proceeds to be deposited in the Trust and divided. The CR 2A stipulated:

> The issues of attorney fees, distributions to Gary Clark, distributions to Curtis Clark, compensation due to Gary Clark as Trustee, the final accounting, and any alleged wrongdoing by Gary Clark as Trustee, are not resolved. If not resolved by agreement, these issues will be returned to the Court for disposition under TEDRA.

4

With several issues still undecided after mediation, Curtis filed an amended TEDRA petition, adding claims for breach of the trust instrument and breach of fiduciary duty. Curtis followed the amended petition with a partial motion for summary judgment on the issues of breach of the trust and breach of fiduciary duty. The trial court granted partial summary judgment, finding that Gary had engaged in self-dealing and ordered reimbursement of $19,758 paid toward his daughters' tuition.[2] The court also awarded attorney fees to Curtis. The order specified that the fees were to be paid by the Trust, but Gary was to reimburse the Trust for the amount because "but for Gary's actions . . . Curtis would not have to have needed to bring this litigation." Gary moved for reconsideration of the decision, but the court denied his request.

Gary subsequently filed a motion to compel Curtis to pay rent on the Hemmi Road property. After hearing oral arguments, the court concluded that Gary had not provided evidence of a lease agreement that required Curtis to pay rent on the property. The court determined that the mortgage, property taxes, and property insurance on the Hemmi Road property were expenses of the Trust that should be paid from the trust and denied Gary's motion.

Gary also requested a trial setting. After oral argument, the trial court determined that a trial was not necessary at that time and denied motion.

---

[2] The trial court determined that Gary had used $29,758 in Trust funds for his daughters' college tuition. Prior to her death, Donna had authorized $10,000 gifts to both Curtis and Gary. Curtis, but not Gary, had received his $10,000 gift from the Trust prior to Donna's death. The court offset Gary's reimbursement for the self-dealing tuition payments by the $10,000 gift and ordered Gary to repay the Trust $19,758.

According to the court, the parties had few remaining issues, and if no agreement could be reached, one of the parties could note a motion for resolution under TEDRA or set for trial.

In April 2020, the mediator appointed a realtor to sell the Coronado and Waterside properties. The realtor recommended marketing the two properties at the same time after a few minor updates, landscaping, cleaning, and staging. After the updates were completed, the properties went on the market in November 2020, with Coronado listed at $775,000 and Waterside listed at $650,000. The properties sold quickly, with Coronado selling for $935,000, and Waterside selling for $700,000. Unbeknownst to Curtis, Gary and his wife, Cindy, were the highest bidders for the Coronado house. When he later discovered this information, Curtis objected strenuously to the sale of the Coronado house to Gary. The mediator appointed a second realtor to evaluate the propriety of the sale to Gary and Cindy. That agent concluded that the method of sale was fair and resulted in a sale at the highest and best terms.

Beginning in February 2021, Gary prepared and submitted several versions of a final accounting. Curtis argued the final accountings were inadequate. Initially, in March 2021, the trial court determined the final accounting did not comply with RCW 11.106.030 and significant disputed issues remained to preclude approval of the accounting, distribution, and termination of the Trust.

In April 2021, Curtis discovered through Gary's response to his discovery request that Cindy had received a referral fee of $25,050 from the sales

commission of the realtor who assisted them in the purchase of the Coronado property.[3] Based on this information, in response to one of Gary's motions to approve the final Trust accounting, Curtis alleged that Gary failed to account for the referral fee in the final Trust accounting. Gary did not respond to this argument. Accordingly, in March 2022, in supplemental findings of fact and conclusions of law on the accounting, the court, noting that Gary had not provided "any argument that the refund should not be included in the net value of the property to the Trust," ordered Gary to return Cindy's portion of the sales commission to the Trust. The court also ordered Gary to file an amended final accounting and distribution that reflected the court's rulings, including reimbursement of Cindy's commission. Gary filed a motion for reconsideration of the commission issue, which the trial court denied.

The March 2022 supplemental findings of fact and conclusions of law on the accounting also included awards of attorney fees and costs to both Gary and Curtis. The court summarized that it had previously awarded $12,500 from Gary to Curtis and $46,935.46 from the undivided Trust related to the successful summary judgment for breach of fiduciary duty and breach of the Trust, and an additional award of $9,662.50 from the Trust.

---

[3] Cindy is also a real estate agent. As part of the purchase and sale of the house, the buyer's and seller's agents each received a 3% commission of $28,050. Cindy and Gary's agent gave Cindy the majority of that commission, $25,050, as a referral fee "in acknowledgement that this was her personal purchase."

7

Curtis requested $69,703.75 in additional attorney fees and costs. The court decreased the fees for work on an unsuccessful motion and ordered the Trust to pay an additional $63,130.75. Gary petitioned the court for $165,000 in attorney fees and costs. The court reviewed the supporting documentation and awarded Gary $131,948.35 from the Trust.

Gary appealed many of the court's decisions. Curtis separately appealed the attorney fee awards, claiming fees awarded to him should be paid by Gary's portion of the Trust, not the undivided Trust, and that fees awarded to Gary should not be paid by the undivided Trust. This court consolidated the appeals, designating Gary as the Appellant/Cross-Respondent and Curtis as the Respondent/Cross-Appellant.

## DISCUSSION

The trial court's decisions and orders all occurred pursuant to Curtis's petition filed under TEDRA. In cases involving trusts, TEDRA provides the court with "full power and authority to proceed with such administration and settlement in any manner and way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court." RCW 11.96A.020(2). Given this broad grant of power, we must accord significant deference to a trial court's decisions. In re Est. of Fitzgerald, 172 Wn. App. 437, 448, 294 P.3d 720 (2012) (reviewing a trial court's decision to deny a continuance to conduct discovery in a TEDRA proceeding for abuse of discretion). "Where the decision or order of the trial court is a matter of discretion,

it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)[4] Untenable reasons include errors of law. Noble v. Safe Harbor Fam. Pres. Tr., 167 Wn.2d 11, 17, 216 P.3d 1007 (2009).

Gary assigns error to many of the trial court's findings of fact and conclusions of law. We review findings of fact for substantial evidence. In re Est. of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Substantial evidence is "evidence that is sufficient to persuade a rational, fair-minded person of the truth of the finding." Id. If substantial evidence supports the findings of fact, we then decide whether the findings of fact support the trial court's conclusions of law. Landmark Dev., Inc. v. City of Roy, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999). We review conclusions of law de novo. Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

I.      Order Denying Motion to Appoint Trust Protector

Article Four of the Trust provides that a Trustee or beneficiary may petition the court to appoint a Trust Protector to direct the Trustee in matters concerning the Trust and to assist in achieving Donna's expressed objectives. Gary

---

[4] Gary claims that "[t]he trial court made all of its decisions, including attorney fees, summarily" and, thus, the standard of review should be de novo. Gary's argument ignores that TEDRA allows for witness testimony by affidavit, and the court may enter any order it deems appropriate to "(a) resolve such issues as it deems proper, (b) determine the scope of discovery, and (c) set a schedule for further proceedings for the prompt resolution of the matter." RCW 11.96A.100(10). In this context, the lack of trial proceedings with live testimony does not require de novo review of issues within the trial court's discretion.

requested appointment of John Kamrar, who drafted the Trust instrument and represented him in Trust matters prior to the TEDRA petition. The trial court denied the motion to appoint Kamrar due to the potential conflict of interest after having represented Gary, but it did not foreclose the possibility of appointing a Trust Protector in the future.

Gary contends the trial court erred by denying his request to appoint a Trust Protector. However, he fails to comply with RAP 10.3(a)(6), which requires legal and factual argument in support of his claim. Given this lack of legal argument, as well as the trial court's concerns about the conflict of interest with Kamrar and Curtis's representation that the parties hoped to resolve their disputes at mediation without incurring the added cost of the Trust Protector, it was not an abuse of discretion for the court to deny Gary's motion to appoint Kamrar as Trust Protector.

II.    Order Granting Discovery and Related Fees

At the same hearing regarding the Trust Protector, the court allowed discovery and mediation to proceed. Gary assigns error to the trial court's entry of the order granting discovery. Again, Gary fails to provide any legal argument as to why the trial court's action was an abuse of discretion.

TEDRA allows discovery if the court orders it. RCW 11.96A.100; RCW 11.96A.115. Moreover, Gary objected to the discovery request only insofar as it requested attorney fees. In response, the trial court struck the request for fees on the motion, but reserved the issue for future consideration. Because TEDRA

10

allows the court to award attorney fees, its reservation of the final decision on fees related to the discovery request was well within its discretion. See RCW 11.96A.150.

III.     Breach of Trust and Breach of Fiduciary Duty

Gary argues the trial court erred by granting Curtis's motion for partial summary judgment determining he breached his fiduciary duty by paying his daughters' college tuition from the Trust. Curtis claims the undisputed facts show that by making these payments, Gary breached the Trust instrument and engaged in self-dealing in breach of his fiduciary duty. Curtis also claims that Gary's failure to divide the Trust into shares was a breach of the Trust instrument. We agree that Gary's conduct amounted to a breach of fiduciary duty and breach of the Trust.

We review orders on summary judgment de novo. Kim v. Lakeside Adult Fam. Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing CR 56(c)). We consider the evidence and reasonable inferences in the light most favorable to the nonmoving party. Kim, 185 Wn.2d at 547.

We also interpret trust instruments de novo. In re Joanne K. Blankenship Survivor's Tr., 18 Wn. App. 2d 686, 694, 493 P.3d 751 (2021). When interpreting a trust, our duty is to give effect to the trustor's intent. In re Guardianship of

11

Jensen, 187 Wn. App. 325, 331, 350 P.3d 654 (2015). If possible, we ascertain that intent from the unambiguous language of the trust. Id.

A trustee's duties are determined by the terms of the trust, common law, and statute. Cook v. Brateng, 158 Wn. App. 777, 785, 262 P.3d 1228 (2010). "A trustee must administer the trust solely in the interests of the beneficiaries." RCW 11.98.078(1). Additionally, "[a] trustee owes the beneficiaries of the trust 'the highest degree of good faith, care, loyalty, and integrity.' " In re Marriage of Petrie, 105 Wn. App. 268, 275, 19 P.3d 443 (2001) (quoting Esmieu v. Schrag, 88 Wn.2d 490, 498, 563 P.2d 203 (1977)). Self-dealing violates the trustee's duty of loyalty to the beneficiaries. Id. at 276.

According to Gary, his use of Trust funds for his daughters' college tuition payments was not self-dealing because the Trust described the importance of education, Donna had used the Trust for college tuition in the past, and his daughters were beneficiaries of the Trust. However, the language of the Trust belies this argument. The provision for administration of the Trust after Donna's death requires the Trustee to "divide the remaining trust property into separate shares for my descendants *per stirpes*." The Trust defines "per stirpes":

> Whenever a distribution is to be made to a person's descendants *per stirpes*, the distribution will be divided into as many equal shares as there are then-living children and deceased children who left then-living descendants. Each then-living child will receive one share, and the share of each deceased child will be divided among the deceased child's then-living descendants in the same manner.[5]

---

[5] This definition is consistent with case law. "Per stirpes" "allows a lineal descendant to take to the same degree as they would have taken had the beneficiaries within the chain survived the testator." Erlenbach v. Est. of Thompson by Newbigging, 90 Wn. App. 846, 851, 954 P.2d 350

Here, the Trust's language and intent are unambiguous as to how and when the Trust was to be divided. Because Gary and Curtis both survived Donna, the Trust was to be divided between them as her then-living children.

Donna died on September 2, 2018. In July 2019, Curtis filed his initial TEDRA action requesting division of the Trust. Mediation occurred in December, and the parties signed the CR 2A on December 10, 2019. Curtis filed his amended TEDRA petition with the breach allegations and the subsequent motion for summary judgment in January 2020, more than a year after Donna's death. At that time, Gary had liquidated and given Curtis his share of some investment accounts, but had not yet divided the Trust or taken substantial steps toward selling the properties to facilitate division of the Trust assets.

Gary noted substantial challenges to division of the Trust assets, particularly due to Curtis's behavior. While the parties clearly had animosity toward each other and differences of opinion on the distribution of Trust assets, the evidence submitted in support of the motion for summary judgment shows that Gary did not want to sell the real properties in the Trust. Gary told Curtis that long-term rentals made more financial sense than sale of the properties. This may have been a sound financial decision, but maintaining the real properties in

---

(1998). As further explained, "[f]or example, if a testator dies leaving her estate to her two children, A & B, and A predeceases the testator leaving two children, C & D, then one-half of the estate goes to B, and the other half is divided between C & D." Id.

the Trust hindered the required division of assets for Gary and Curtis. Failure to divide the Trust was a breach of its terms.

Gary's daughters would become beneficiaries of the Trust only upon his death. As a result, Gary's daughters were not beneficiaries of the Trust at the time Gary used Trust funds to pay for their tuition, in August 2019. By disbursing funds to non-beneficiaries, Gary breached the Trust. Partial summary judgment was properly granted for breach of the Trust instrument.

Additionally, Gary's use of Trust funds for his family's benefit amounted to self-dealing, a breach of his fiduciary duty.[6] Gary contends that he intended the tuition payments to come from his portion of the Trust, and he "never, in any accounting prepared or information exchanged, required or asked that Curtis's share of the Trust pay any portion of the college expenses." Gary claims that because the funds came out of his share, Curtis suffered no injury to support a breach of fiduciary duty. Gary ignores that at the time of the tuition payments, the Trust remained undivided. The Donna Clark Irrevocable Trust was one undivided Trust; there was no "Gary's share" and "Curtis's share." Any distribution decreased the amount of the Trust as a whole. Even if Gary may have planned to reduce his portion when finally dividing the Trust, those future intentions did not change the undisputed facts that Gary disbursed undivided Trust assets to non-

---

[6] Gary claims Donna used the Trust to make tuition payments for her granddaughters prior to her death as evidence that she intended for the granddaughters to receive Trust funds for education. But the checks were written from personal accounts belonging to Donna Marie Clark and Donna M Clark, and provide no evidence that they drew from the Trust. Moreover, that evidence was not before the trial court on summary judgment.

beneficiaries so as to benefit his family. Regardless of his intentions, Gary engaged in self-dealing, thereby breaching his fiduciary duty.

The undisputed evidence shows that Gary breached the terms of the Trust and his fiduciary duties.[7] Gary failed to present evidence raising a genuine issue of material fact to defeat summary judgment on these grounds. Curtis was entitled to a judgment as a matter of law on breach of the Trust instrument and breach of fiduciary duty.[8]

IV.     Denial of Motion to Compel Rent

Gary contends the trial court incorrectly determined that Curtis could stop paying rent on the Hemmi Road property and allowed Curtis 16 months of free possession of the property. However, the trial court's decision was well supported by evidence in the record and was not an abuse of discretion.

The Trust specifically addressed a beneficiary's occupation of a Trust property:

> My Trustee may permit any Income Beneficiary of the trust to occupy any real property or use any personal property owned by the trust on terms or arrangements that my Trustee determines,

---

[7] Gary assigns error to several findings of fact related to the court's decision on the motion for summary judgment. Assignments of error 4-8 pertain to findings of fact in the court's order on attorney fees and costs awarding fees to Curtis after granting his motion for partial summary judgment. These findings are all supported by the evidence of Gary's breaches. Assignments of error 10-14 relate to the conclusions of law awarding fees for the breaches to Curtis from Gary from the undivided Trust. Assignments of error 20, 27, and 33 relate to the court's supplemental findings and conclusions re: accounting; these assignments of error merely reiterate facts pertaining to reimbursement of the Trust for the tuition and attorney fees related to the breach.

[8] Gary also assigns error to the trial court's denial of his motion to reconsider its decision on Curtis's motion for summary judgment. However, he makes no argument in support of this assignment of error. An appellate court will not consider a claim of error unsupported by legal argument in the opening brief. Jackson v. Quality Loan Serv. Corp., 186 Wn. App. 838, 845, 347 P.3d 487 (2015).

including rent free or in consideration for the payment of taxes,
insurance, maintenance, repairs, or other charges.

Thus, the Trustor's intent was clear that a beneficiary could occupy a Trust

property rent-free.[9]

In his motion to compel rent, Gary stated that Curtis had paid rent for more

than five years prior to Donna's death. Curtis agreed that he had paid $1,000 per

month prior to Donna's death, but provided a check showing that he paid Donna

rather than the Trust. In his declaration, Curtis stated that he had not received a

written lease or entered an agreement with Gary to lease the Hemmi Road

property. The trial court noted that the record did not contain evidence of a lease

agreement that required Curtis to pay rent on the property. Additionally, the court

ruled the mortgage, property taxes, and property insurance on the Hemmi Road

property "are expenses of the trust that should be paid from the trust. So until it is

divided, those expenses are expenses of the trust."

The house on Hemmi Road was a property of the Trust. The terms of the

Trust allowed a beneficiary to live in Trust property without cost. Gary failed to

show that Curtis was expected to pay rent to the Trust in order to occupy a Trust

---

[9] Indeed, the terms of the Trust even contemplated payment for a beneficiary's residence
in a real property outside the Trust, even to the financial detriment of the Trust:

My Trustee may acquire, maintain, and invest in any residence for the
beneficiaries' use and benefit, whether or not the residence is income producing
and without regard to the proportion that the residence's value may bear to the
trust property's total value, even if retaining the residence involves financial risks
that Trustees would not ordinarily incur. My Trustee may pay or make
arrangements for others to pay all carrying costs of any residence for the
beneficiaries' use and benefit, including taxes, assessments, insurance,
maintenance, and other related expenses.

property. In light of the evidence, the trial court did not abuse its discretion by denying Gary's motion to compel rent.

V.      Cindy's Commission

Gary claims that by ordering Gary to reimburse the Trust for the commission paid to Cindy for the purchase of the Coronado home, the trial court impermissibly interfered with Cindy's contract with their agent because neither Curtis nor Gary was a party to the contract, and Cindy was not a party to the TEDRA action. However, Gary failed to respond to Curtis's request for refund of the commission or properly support his motion for reconsideration.

Curtis raised the issue of Cindy's referral fee in his December 2021 response to Gary's second motion for approval of final Trust accounting and requested the court require Gary to reimburse the Trust for this "kickback."[10] In its March 2022 "Supplemental Findings and Conclusions re: Accounting," the trial court found that Gary neither responded to the allegation that he had failed to account for this money in the accounting nor provided any argument as to why the referral fee should not be refunded to the Trust.[11] Based on these findings, the court concluded: "The Court orders that Gary Clark reimburse the Trust in the

---

[10] It is undisputed that Cindy and Gary form a marital community.

[11] In considering Curtis's claim that Gary failed to account for Cindy's commission in the final accounting, the trial court found that "Gary Clark did not respond to this allegation or provide any argument that the refund should not be included in net value of the property to the Trust." As Gary did not assign error to this finding, it is a verity on appeal. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992) (unappealed findings of fact are verities on appeal). Gary assigned error to the concluding statement from the court that it "orders that Gary Clark reimburse the Trust in the amount of $25,050." This conclusion is supported by the finding that is a verity on appeal.

amount of $25,050." Gary moved for reconsideration of the court's order to refund the amount of Cindy's commission to the Trust. During the oral argument on the motion for reconsideration, the trial court denied the motion, stating:

> I just think it's part of the accounting that that was what the net proceeds of the sale of the house were that should go to the Trust were whatever the sale price was, minus the cost of sale, which includes the realtors' fees. So if the realtors' fees were half as much as they thought they would be, then that goes to the Trust, not to Gary and Cindy Clark.

The trial court denied the motion for reconsideration without written findings of fact and conclusions of law.

CR 59(a) allows for an aggrieved party to request reconsideration for irregularity in the proceedings, misconduct of the prevailing party, accident or surprise, newly discovered evidence, excessive damages, error in assessment of the recovery, no evidence or reasonable inference to justify the decision or that it is contrary to law, error of law, or that substantial justice has not been done. The motion must identify "the specific reasons in fact and law as to each ground on which the motion is based." CR 59(b). CR 59 does not permit new theories of the case that could have been raised before entry of an adverse decision. Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005). "The trial court's discretion extends to refusing to consider an argument raised for the first time on reconsideration absent a good excuse." River House Dev. Inc. v. Integrus Architecture, P.S., 167 Wn. App. 221, 231, 272 P.3d 289 (2012).

Because Gary failed to submit any argument below on the issue of Cindy's commission in response to Curtis's initial request, his motion for reconsideration

was based solely on new legal theories. Gary also failed to provide a good excuse for the new arguments or identify the grounds for reconsideration as required by CR 59(b). In light of these failures, the trial court did not abuse its discretion by denying Gary's motion for reconsideration.

VI.     Denial of Trial Setting

Gary repeatedly requested a trial to resolve all outstanding issues. In response to the request for a trial setting, the court noted that few issues remained and a trial was unnecessary at the time. Gary argues on appeal that the trial court's decision-making process erroneously resolved disputed issues of fact through motions and hearings.

Gary misunderstands the authority of the court and procedural rules under TEDRA. The statute specifies that "[i]f the initial hearing is not a hearing on the merits or does not result in a resolution of all issues of fact and all issues of law, the court may enter any order it deems appropriate," including an order that "resolve[s] such issues as it deems proper." RCW 11.96A.100(10). To facilitate the quick resolution of cases, TEDRA allows for testimony by witnesses by affidavit. RCW 11.96A.100(7). As a result, "[i]t is not necessary that the court hear oral testimony in order to make findings." Foster v. Gilliam, 165 Wn. App. 33, 55, 268 P.3d 945 (2011). The trial court's decision to resolve contested issues without hearing oral testimony was within its authority under TEDRA. Therefore, the denial of trial setting was not an abuse of the court's discretion.

VII.   Attorney Fees Awarded by the Trial Court

Both parties appeal the trial court's award of attorney fees and costs below. Gary appeals the award of fees to Curtis from both himself and from the undivided Trust, claiming he is the only party entitled to fees under TEDRA. Curtis argues that Gary should not have received any fees below and that the trial court should have awarded all fees from Gary personally, rather than the undivided Trust.

TEDRA gives courts the discretion to award reasonable attorney fees and costs:

> (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

RCW 11.96A.150(1). Under this statute, courts have considerable discretion over whether to award fees. Atkinson v. Est. of Hook, 193 Wn. App. 862, 874, 374 P.3d 215 (2016). We review an award of attorney fees for abuse of discretion. In re Est. of Evans, 181 Wn. App. 436, 451, 326 P.3d 755 (2014).

Generally, a trust bears the cost of its administration, including litigation. In re Est. of Boatman, 17 Wn. App. 2d 418, 427, 488 P.3d 845 (2021). But "where litigation is necessitated by the inexcusable conduct of the fiduciary, the fiduciary individually must pay those expenses." Id. However, if the court makes no finding

20

of fact of a breach of fiduciary duties or inexcusable conduct, the fiduciary should not be ordered to personally pay attorney fees. Id. at 428.

A. Gary's Appeal of Fees to Curtis

Gary argues that Curtis should not receive attorney fees because his litigation did not benefit the Trust.[12] He cites In re Est. of Niehenke, 117 Wn.2d 631, 648, 818 P.2d 1324 (1991), and Bartlett v. Betlach, 136 Wn. App. 8, 22, 146 P.3d 1235 (2006), which both state that attorney fees should be awarded against a trust only where the litigation results in substantial benefit to the trust. However, subsequent to those cases, RCW 11.96A.150(1) was amended to explicitly allow the trial court to consider "any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefited the estate or trust involved." As a result, the trial court has the discretion to consider benefit to the trust as a factor, but such benefit is not required for an award of attorney fees. Thus, the trial court's award of fees to Curtis without a determination that the litigation benefited the Trust was not an abuse of discretion.

Additionally, the trial court did not abuse its discretion in ordering Gary to personally pay attorney fees related to the partial motion for summary judgment.[13] Here, Curtis brought the successful partial summary judgment motion on Gary's breach of the trust instrument and breach of fiduciary duty. The

---

[12] Gary's assignments of error 14, 21, 22, 24-26, 28, 30-31, and 33-34 correspond to this argument.
[13] Gary's assignments of error 12-13, 20, 27, and 34 correspond to this argument.

trial court found that "[b]ut for Gary Clark's failure to divide the Trust into the Beneficiary Trusts and his distributions from the undivided assets of the Trust, Curtis Clark would not have had to bring this litigation," which satisfies the requirement under Boatman for such findings. Therefore, the trial court did not abuse its discretion in ordering Gary personally to pay Curtis's attorney fees and costs associated with his successful claims for breach of trust and breach of fiduciary duty.[14]

### B. Curtis's Appeal of Fees Awarded from the Undivided Trust

Curtis contends the trial court abused its discretion by awarding a portion of his attorney fees and costs from the undivided Trust, rather than from Gary's personal share. According to Curtis, this means he "would be required to pay half of Gary's fees in prosecuting failed motions that served [Gary's] own interests and in defending an action brought about by [Gary's] own gross misconduct."

During the first review of Curtis's request for attorney fees, the trial court ordered fees from both Gary individually and the undivided Trust. For bringing the successful motion for partial summary judgment on the breach claims, the trial court awarded Curtis $12,500 in fees from Gary rather than the Trust. The court awarded the remaining $46,935.46 from the undivided Trust, explaining in its oral ruling that "[Gary and Curtis] share that cost because that did benefit both brothers." Curtis argues the court erred by ordering fees from the undivided Trust

---

[14] The trial court also included Curtis's fees for responding to Gary's motion to compel rent in its order.

after acknowledging that the litigation would have been unnecessary if Gary had abided by the terms of the Trust and his fiduciary duty. Curtis points to the findings of facts and conclusions of law for the attorney fee award, in which the court stated, "[b]ut for Gary Clark's failure to divide the Trust into the Beneficiary Trusts and his distribution from the undivided assets of the Trust, Curtis Clark would not have had to bring this litigation."

While this statement seems to support Curtis's argument, the court provided a more detailed explanation of what it meant by "litigation" and clarified its intentions orally during discussion with the parties:

> Gary Clark would bear the cost of -- when I say the litigation, I mean the litigation to bring the summary judgment motion that had to do with the self-dealing, breach of fiduciary duty, and that sort of thing, not the entire cost of the litigation from the beginning of the TEDRA and all the way through, because I do think that a great part of that litigation benefited both parties, and that everybody was setting forth reasonable positions, good faith arguments, and did mediate in good faith, as well, and a lot of the case was resolved in mediation which benefitted everybody.

The trial court explained that it examined Curtis's attorney fees application and bill and extracted the line items related to the summary judgment motion and the motion to compel rent and estimated the percentage of work on those motions for mixed entries on the bill. The court arrived at $12,500 to be paid from Gary to Curtis.

Generally, a court's oral ruling, if not incorporated into its factual findings or order, has no binding effect on the parties. See Garza v. Perry, No. 83377-4, slip op. at 18-19 (Wash. Ct. App. January 30, 2023) (published)

23

https://www.courts.wa.gov/opinions/pdf/833774.pdf. However, "a trial court's oral decision may be considered . . . in interpreting findings of fact and conclusions of law, so long as there is no inconsistency." City of Lakewood v. Pierce Cnty., 144 Wn.2d 118, 127, 30 P.3d 446 (2001) (internal quotation marks omitted) (citation omitted). When a trial court's findings are incomplete or indecisive, we may "look to the oral decision of the trial court to eliminate speculation as to the premises upon which the trial court based its decision." Schoonover v. Carpet World, Inc., 91 Wn.2d 173, 177-78, 588 P.2d 729 (1978).

Here, reference to the trial court's oral statement clarifies the term "litigation" in the written order. The trial court intended for Gary to pay Curtis's fees only for the work pertaining to the summary judgment and motion to compel. The court provided its reasons for finding that the litigation benefitted both parties, including that many of the issues were resolved in mediation prior to summary judgment. Given this explanation, the trial court's decision to award the $46,935.46 from the undivided trust was within the trial court's considerable discretion under TEDRA.

Curtis also contends the trial court erred by awarding him $9,662.50 in attorney fees and costs from the undivided Trust, rather than from Gary personally, for responding to Gary's motion asking the court clarify whether Donna's grandchildren were beneficiaries under the terms of the Trust. Curtis successfully argued that he should be awarded fees because the trial court had previously determined this issue in ruling on the summary judgment motion for

breach of fiduciary duty.[15] In that previous ruling on summary judgment, the court had ordered attorney fees and costs to be paid by the undivided Trust.[16]

However, in its order on the subsequent motion by Gary to define beneficiaries, the trial court did not make findings of fact that Gary breached his fiduciary duty. The court again made no mention of a breach of fiduciary duty or "inexcusable conduct" in its order awarding Curtis's fees from Gary personally. While the motion to define beneficiaries arguably relitigated an issue that related to Curtis's claims of self-dealing and breach of fiduciary duty, attorneys' fees and costs for the subsequent motion cannot be assessed against Gary personally without supporting findings of fact. See Boatman, 17 Wn. App. 2d at 428-29. As there were no findings that Gary breached his fiduciary duty by bringing the motion to define beneficiaries, the court properly exercised its discretion to award fees from the undivided Trust.

Finally, Curtis argues the trial court should not have ordered the Trust to pay attorney fees of $33,145.81 awarded to him for additional discovery and

---

[15] In finding that Gary had breached the Trust and breached his fiduciary duty by self-dealing, the trial court necessarily determined that the grandchildren were not beneficiaries under the Trust. Gary argued the grandchildren were entitled to tuition payments from the Trust as beneficiaries. The trial court disagreed, and concluded that Gary's use of the Trust for that purpose was a breach of the instrument and fiduciary duties. Therefore, Gary's motion to determine whether the grandchildren were beneficiaries of the Trust was an attempt to relitigate the issue. See Section III, supra, of this opinion.

[16] The court originally ordered attorney fees and costs from Gary individually. After Boatman, 17 Wn. App. 2d at 228-29, the court reconsidered and ordered the fees paid by the undivided Trust because "it was error to order a personal representative of an estate to personally pay attorney fees of an opposing party, absent a finding that the personal representative breached their fiduciary duty."

opposition to Gary's final accounting, which the trial court deemed incomplete.[17] Again, the trial court did not make any determination that Gary breached his fiduciary duty with respect to these issues. Therefore, the record does not support Gary's being personally liable for the attorney fees incurred in this litigation over Trust matters. The trial court did not abuse its discretion by awarding these fees to Curtis from the undivided Trust, rather than from Gary.

    C.  <u>Curtis's Appeal of Fees Awarded to Gary</u>

Curtis argues that "[i]n fairness, none of Gary's fees should be paid out of the undivided Trust." However, the Trust provides for the use of its assets to defend the Trustee: "any individual or corporate fiduciary that serves as my Trustee will not incur any liability for any action, omission, or forbearance made in good faith reliance on information, consent, or directions received from a Trust Protector, except for cases of willful misconduct or gross negligence on the Trustee's part." Where the trial court made no findings of willful misconduct or gross negligence, as Trustee, Gary was entitled to payment of his attorney fees by the Trust. Additionally, TEDRA gives the trial court discretion to award fees under RCW 11.96A.150(1). The Trust's payment of Gary's attorney fees was in keeping with terms of the Trust and within the trial court's discretion.

---

[17] This total results from $21,502.10 for the period of February 23, 2021 and May 3, 2021 and $11,643.71, which was a portion of the fees from May 27, 2021 through November 19, 2021, discounted for $6,573 for hours spent on an unsuccessful summary judgment motion on September 7, 2021.

26

VIII.   <u>Fees on Appeal</u>

Both Gary and Curtis request attorney fees on appeal. Appellate courts also have broad equitable discretion to award fees under TEDRA.  RCW 11.96A.150(1).

As discussed above, the terms of the Trust allow an award of fees from the Trust to Gary as Trustee. However, Gary should not receive fees for appeal of any issues regarding his breach of fiduciary duties or breach of the trust instrument. In addition to appealing the rulings on the breach claims, Gary assigned error to almost every order entered by the trial court but prevails on none. Thus, we award fees on appeal to Curtis from the Trust subject to compliance with the requirements of RAP 18.1(d).

Affirmed.

_____
Chung, J.

WE CONCUR:

_____          _____
Mann, J.                                                         Dwyer, J.

27